[No. 10779. Department Two. May 14, 1913.]

FRED T. SAWDEY, *Respondent*, v. A. E. BARNES, *Appellant.*[1]

ATTORNEY AND CLIENT—SETTLEMENT OF SUIT—FRAUD—EVIDENCE—SUFFICIENCY. The evidence is insufficient to sustain a finding that an attorney in making a settlement for his client with a railroad company defrauded him by misrepresenting the amount of money received, and converted the same, where it appears that the check and voucher, relied upon to show that the attorney received the money, was presented to the attorney in blank, he did not learn of its recitals until long afterwards, and did not cash the check, which was returned to the person who brought it to him and receipted for prior to its approval by the auditor of the company, and was cashed by other parties.

Appeal from a judgment of the superior court for Spokane county, Hinkle, J., entered December 18, 1911, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action in tort. Reversed.

*John V. Pearson* and *James P. Dillard*, for appellant.

*P. W. Kimball*, for respondent.

FULLERTON, J.—Sometime in 1901, the respondent, Sawdey, as plaintiff, began an action in the superior court of Spokane county against the Spokane Falls & Northern Railway Company, to recover damages for the alleged maltreatment by the railway company's surgeon of a fracture of a femur suffered by him. The plaintiff was represented in the action by the law firm of Barnes & Latimer, consisting at that time of A. E. Barnes and Geo. A. Latimer, the defendants in the present action, who had undertaken to prosecute the action to a conclusion for one-half of the amount recovered. On the trial of

[1]Reported in 132 Pac. 225.

the action, a judgment of nonsuit was entered against the plaintiff, whereupon an appeal was taken to this court, where the judgment was reversed and the cause remanded for a new trial. When the cause was about to be tried for a second time, the representatives of the railway company made a proposition to Sawdey's counsel looking towards a settlement of the action. This fact was duly made known to Sawdey, and after some negotiation, of which Sawdey was apparently kept advised, his counsel reported to him an offer in settlement of $2,000, over and above the costs then expended in the action. Sawdey, after talking the matter over with his counsel, gave his consent to the settlement, whereupon a check was drawn in his favor for that sum by the railway company, and the action dismissed. Sawdey cashed the check and paid one-half thereof to his counsel in pursuance of his contract with them. This settlement was made on April 20, 1903.

In August, 1910, Sawdey brought the present action against his former counsel, alleging that he had been cheated and defrauded in the settlement, a fact he did not learn until the month of July, 1908. He alleged that the settlement was in the particular charge of, and was conducted by, A. E. Barnes, and that Barnes actually made the settlement for $3,500, converting and appropriating to his own use the difference between that sum and the amount of the purported settlement. The defendants appeared and put in issue the allegations of the complaint. The action was thereafter tried by the court sitting without a jury, and resulted in a judgment in favor of Sawdey against Barnes and Latimer as individuals for $750 and interest. From the judgment, Barnes appeals.

The evidence on the part of the respondent tended to show the facts as we have detailed them in the foregoing statement. In addition thereto, he produced a voucher from the railway company's office showing that, on the day of the settlement of his action against the railway company, the firm of Barnes & Latimer receipted for the sum of $1,500, purporting to be

"for and in full settlement, satisfaction, release and discharge of attorney's lien for cost advanced and services rendered" to Sawdey in his action against the railway company; also a check from the railway company for $1,500, payable to Barnes & Latimer, which the firm had indorsed and which had been cashed at a local bank; the firm's signature being in the handwriting of Barnes. There was no other proof that Barnes, or the firm of Barnes & Latimer, received the money represented by the voucher and check.

Mr. Latimer did not testify in the cause. Mr. Barnes testified that, while he signed the voucher in the name of the firm, and afterwards indorsed the check, neither he individually, nor the law firm of Barnes & Latimer, received the money represented thereby; that the actual settlement was in fact made for $2,000, and that this was all the money received, except some $98 which was advanced as costs by his law firm, and which was repaid by the personal check of one of the railway company's representatives. He testified further that the voucher, when presented to him and when he signed it, was in blank, and that he learned of its recitals long afterwards; that he did not actually cash the check, but delivered it after indorsing it to the person who brought it to him for that purpose. The original voucher and check are in the record, and on their face they support the testimony of Barnes. The voucher bears conclusive evidence that it was receipted for by Barnes & Latimer prior to its approval by the company's auditor, as the name of the firm was first written in the space reserved for the signature of that officer, and was then erased by running lines through it and re-signed at the proper place, so that the auditor, when he approved it, was compelled to write his name above the erased name of Barnes & Latimer on printed matter outside of the reserved space. The check bears indorsements showing that it was not cashed either by Barnes or Latimer. In addition to the indorsement of Barnes & Latimer, to whom it was made payable, it bore the approval of the bank's cashier, which the paying teller of the bank tes-

tified was the usual custom where a check indorsed by the payee was presented for payment by a third person who desired it cashed without himself indorsing it.

There was no impeachment or attempted impeachment of the witness Barnes, either as to his reputation for truth and veracity, or by contradicting his statements; and since his evidence has the support of the physical appearance of the exhibits relied upon to maintain the contrary conclusion, we see no reason why his evidence should not be given credence. We are constrained to believe it should be; and giving it credence, it is clear that the judgment is not supported by the weight of the evidence.

The judgment is therefore reversed as to the defendant Barnes, and the cause remanded with instructions to enter a judgment in his favor to the effect that the plaintiff take nothing by his action.

CROW, C. J., MORRIS, ELLIS, and MAIN, JJ., concur.